600 So.2d 1187 (1992)
Susan FOREHAND, a/k/a Susan Abreu, Appellant,
v.
SCHOOL BOARD OF GULF COUNTY, Florida, Appellee.
No. 90-1676.
District Court of Appeal of Florida, First District.
May 26, 1992.
*1188 David Brooks Kundin of Dobson & Kundin, P.A., Tallahassee, for appellant.
Charles A. Costin of Costin and Costin, Port St. Joe, for appellee.
ZEHMER, Judge.
Susan Forehand, a fifth grade school teacher employed under a continuing contract by the Gulf County School Board, appeals the Board's final order approving, in part, the superintendent's findings of misconduct, and implementing his recommendation that Forehand be suspended from her position for ten days without pay. Raising four points on appeal, Forehand complains that (1) the manner in which the Board conducted the hearing deprived her of due process and a fair hearing; (2) the findings of misconduct are not supported by competent, substantial evidence; (3) the Board exceeded its statutory authority set forth in chapters 230 and 231 by imposing a fine; and (4) she is entitled to an award of attorney's fees and costs for all proceedings in this cause pursuant to section 120.57(1)(b)10, Florida Statutes (1989), because the Board's gross abuse of discretion precipitated this appeal. Although we find no merit in several of her contentions, we agree that certain of the charges are not supported by competent, substantial evidence, and agree that a procedural error impaired the fairness of the hearing. Accordingly, we vacate the order and remand for a new evidentiary hearing.

I.
Forehand argues three grounds in support of her contention that the proceedings below were conducted in a manner which deprived her of the fundamental right to procedural due process and the right to a fair and impartial hearing in three respects: first, as the Board had initially denied Forehand notice and opportunity to be heard on the charges of misconduct when she was initially suspended without pay and then reinstated after she voluntarily dismissed her federal civil rights action challenging the Board's action, the Board could not act as an impartial fact-finder in the subsequent evidentiary hearing that led to the appealed order now under review; second, the Board's deliberations were not public when it voted on the superintendent's recommendations; third, the Board used the same attorney as prosecutor and legal advisor during the hearing, contrary to wellsettled law that traditional notions of justice and fair play require an administrative body in disciplinary proceedings to designate one person to act as its legal advisor and a different person to act as prosecutor.

A.
With respect to Forehand's contention that the Board was unable to give her *1189 a fair and impartial hearing because it had previously suspended her without providing her notice and opportunity to be heard, the Board argues that Forehand is precluded from raising this issue on appeal because the parties' "agreement" to voluntarily dismiss the federal action provided that the only issue to be discussed at the hearing before the Board would be the issue of back pay, and Forehand's attorney made no objection on this ground at the hearing. The Board further argues that any error in the Board's initial suspension of Forehand was cured by the Board's reinstatement of Forehand and subsequent evidentiary hearing on the matter.
The transcript reveals that Forehand's attorney made the following statement at the beginning of the evidentiary hearing:
Now, as the members of the school and I'm sure Mr. Costin has filled you in on the fact that in the past, with this case there have been some procedural, there have been some things that were not done correctly procedurally and I'm not going to address those procedural errors, because the School Board has saw fit to reinstate Ms. Forehand and proceed anew with this ten day suspension.
We agree, therefore, that Forehand's attorney not only failed to make an objection on the record below and thereby waived any error on this ground, he affirmatively agreed to proceed with the hearing on the issues tried, thus precluding Forehand from raising this issue on appeal. Lee County Oil Co. v. Marshall, 98 So.2d 510 (Fla. 1st DCA 1957).

B.
We likewise find no merit in Forehand's argument that she was denied a fair and impartial hearing because the Board did not deliberate in public prior to its vote on the Superintendent's recommendations. Forehand relies on the so-called "Government in the Sunshine Law," section 286.011(1), Florida Statutes (1989), which provides that:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
Unquestionably, this law applies to school board meetings and attendant decision-making process. Canney v. Board of Public Instruction of Alachua County, 278 So.2d 260 (Fla. 1973); Mitchell v. School Board of Leon County, 335 So.2d 354 (Fla. 1st DCA 1976). "A county school board should not be authorized to avoid the Government in the Sunshine Law by making its own determination that an act is quasi-judicial. Secret meetings would be prevalent." Canney, 278 So.2d at 263.
In this case, the transcript of the Board's deliberations and vote reveals that Forehand's case was discussed briefly before the vote was taken. Forehand has not cited any authority for the proposition that the discussion shown in this record is inadequate and unlawful. Forehand has not cited any evidence or portion of the transcript that supports her contention that the Board deliberated in private, contrary to requirements of the Sunshine Law. The only record indication of any possibility of private deliberation by a Board member is the chairman's statement, made at the end of the evidentiary hearing, that he felt some private deliberation of the case may be necessary. However, pursuant to an off-the-record discussion with counsel for both parties, the chairman announced that "the School Board members will not deliberate until we, myself, and Mr. Kundin, render an opinion as to the propriety of that [the board's private discussion of the case] under the Sunshine Law." The transcript contains no other references to any private deliberations by Board members.

C.
We conclude there is merit, however, to Forehand's contention that the *1190 Board's attorney acted improperly by participating in the dual role of prosecutor and legal advisor to the Board at the evidentiary hearing. This point was adequately preserved by Forehand's counsel through appropriate objections made throughout the proceedings, without any definitive ruling thereon by the Board or its chairman.
It is well settled in this state that traditional notions of justice and fair play require an administrative board conducting disciplinary proceedings to designate one person to act as its legal advisor and a different person to fulfill the role of prosecutor. Edgar v. School Board of Calhoun County, 549 So.2d 726 (Fla. 1st DCA 1989); McIntyre v. Tucker, 490 So.2d 1012 (Fla. 1st DCA 1986); Ford v. Bay County School Board, 246 So.2d 119 (Fla. 1st DCA 1970). In McIntyre v. Tucker, 490 So.2d 1012, a case involving facts quite similar to the case before us, we held that a teacher was denied a fair hearing before the school board when the same attorney served in both capacities at the evidentiary hearing and during the board's deliberations. In so holding, we noted the conflicting duties imposed on one carrying out both functions, stating that "[i]n practice, impartiality and zealous representation are inherently incompatible in the same person at the same time." 490 So.2d at 1013-14.
In this case, it is undisputed that the Board's attorney performed the dual functions of prosecutor and advisor to the Board despite repeated objections by Forehand's attorney from the beginning to the end of the proceedings. The Board neither overruled nor sustained these objections; the chairman merely stated at one point that the respondent's objection was "noted." The Board's attorney questioned witnesses called on behalf of the Board and introduced exhibits in the record on behalf of the Board, clearly acting as a prosecuting attorney. Yet at other times during the hearing, the Board chairman asked for and received legal advice from this attorney on procedural matters that arose during the hearing, such as how objections should be handled. At the end of the hearing, the chairman, in order to determine whether the Board's deliberations should be held in private or in public, asked this attorney to "get us what [information] you can as to what we can and can't do," and the attorney responded, "I sure will." During the Board's deliberations on the superintendent's recommendations, the same attorney, in response to an inquiry from a board member, advised the members on the proper procedure for voting.
The Board attempts to defend its attorney's participation in the hearing with the argument that he really did not advise the Board on any substantive matters that would be prejudicial to Forehand, and that the superintendent rather than the attorney conducted cross-examination of Forehand, thereby insuring the fairness of the proceeding. This argument suggests that the attorney was not acting in a prosecutorial role, notwithstanding his examination of other witnesses. The plain fact is, the Board has never made it clear to us whether the attorney was acting in the role of prosecutor or in the role of advisor. The Board further argues that Forehand has the burden on appeal of demonstrating actual prejudice due to the attorney's participation in the proceeding, citing several federal court of appeal decisions in support of its argument. However, we reject this argument of the Board, primarily because it does not accord with the law of Florida set forth in the decisions cited above. As we read those decisions, proof that the Board's attorney acted in both capacities during the proceeding is sufficient in itself to demonstrate the requisite prejudice to Ms. Forehand. The extent of participation by the Board's attorney in this case, despite continuing objections by Forehand's counsel, significantly distinguishes this case from the conduct held not to require reversal in Edgar v. School Board of Calhoun County, 549 So.2d 726, and Ford v. Bay County School Board, 246 So.2d 119. In view of the demonstrated prejudice to appellant's right to a fair hearing, the resulting order *1191 must be vacated and the cause remanded for a new evidentiary hearing. McIntyre v. Tucker, 490 So.2d 1012.

II.
We next address Forehand's argument that the Board's findings of misconduct and gross insubordination are not supported by competent, substantial evidence. The final order concludes that Forehand is guilty of these three charges:
(1) that Forehand struck a student, and this act "constitutes misconduct so serious as to impair [Forehand's] effectiveness in the school system," contrary to the requirement of rule 6B-4.009(3), Florida Administrative Code;
(2) that Forehand's "instigation of name-calling and the use of the word `bitch' constitutes misconduct so serious as to impair [Forehand's] effectiveness in the school system. Her use of such language had serious adverse effect on a student. For this reason disciplinary action in some form is appropriate"; and
(3) that Forehand's "continuance of basing academic grading on classroom behavior is a direct violation of direct warnings issued by Principal Kelley. Such conduct constitutes gross insubordination or willful neglect of duties. The conduct was continuing, intentional refusal to obey a direct order, reasonable in nature, given by Principal Jerry Kelley."
The standard of appellate review applicable to this point is set forth in section 120.68(10), Florida Statutes (1989):
If the agency's action depends on any fact found by the agency in a proceeding meeting the requirements of s. 120.57, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record.
Applying this standard, we conclude that the evidence is legally sufficient to support the first charge but legally insufficient to support the other two charges.

A.
The record contains competent, substantial evidence establishing that Forehand struck a student and that this act constitutes serious misconduct that impaired the teacher's effectiveness in the school system. Although the testimony was conflicting, the student testified that Forehand struck him on the right shoulder with a candle and that he reported this incident to his fourth period teacher. The latter teacher reported the matter to the principal, who examined the student and testified that she saw a red mark on the student's shoulder. According to the principal's testimony, other students confirmed this version of the incident when questioned by him. Although Forehand denied striking the student with a candle, saying she only touched him on the shoulder to get his attention, the direct testimony of the student, corroborated by the principal's hearsay testimony, is sufficient evidence to support this charge.
However, as the order must be vacated in its entirety for lack of a fair hearing in accordance with our prior discussion, Forehand's conviction on this charge is remanded for reconsideration at a new evidentiary hearing.

B.
The record lacks competent, substantial evidence to support the charge related to "name-calling." While hearsay evidence is generally admissible in administrative hearings, hearsay alone does not constitute competent, substantial evidence. Section 120.58(1)(a) provides in pertinent part:
Hearsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless *1192 it would be admissible over objection in civil actions.
The record evidence of this charge is inadmissible hearsay, uncorroborated by any other admissible evidence. The only evidence consisted of the principal's testimony that some students had told him Forehand had suggested the students call other students certain names, such as "Reecy Greasy," "Albino Gorilla", and "four pawed dog." None of these students testified at the hearing, and Forehand's testimony denied that she had told any student to call other students by those names. Without reaching whether this conduct rises to the level warranting discipline, we conclude that the uncorroborated hearsay testimony of the principal was legally insufficient to support the finding that Forehand had caused students to call other students by blasphemous or insulting names.
The record likewise lacks competent, substantial evidence that Forehand referred to one of her students as a "bitch" and that Forehand had used that word in the classroom in an offensive and profane manner. The only evidence regarding this charge, other than testimony from Forehand herself, was uncorroborated hearsay. Forehand testified that on one occasion, after two students refused to calm down in the class room, she said, "Kids, we are not here to have a Bitch conference, let's get on task." After Forehand made that statement, one of the students exclaimed that Forehand had called her a "bitch" and ran out of the classroom. Forehand's explanation of the context in which she used the word clearly indicates that she did not refer profanely to any student as a bitch. She testified without significant controversion:
I had two students ... that were trying to rule the classroom. Every day they would come in, they would start fighting with each other in the room. It was a common occurrence, I had to calm down [S.] and calm down [D.] before I could begin teaching. In the afternoon I go home and I watch Oprah Winfrey, she had had a series that month of Bitch conferences, where people had a general gripe session. So every afternoon I would come in and term Bitch conference was used on the T.V., Oprah Winfrey is a social psychologist, she is not just a T.V. personality . .. But I did not call the child a Bitch, my children are human beings, and I respect every one of them for being human beings, none of my children are animals in my eyes, nor any other human being. I don't consider any human being an animal 
The word "bitch" has been defined thusly:
1. A female dog or other canine animal. 2. Slang. A spiteful or lewd woman. 3. Slang. A complaint. 4. Slang. A difficult or confounding problem.  intr.v. bitched, bitching, bitches. Slang. 1. To complain; grumble. 2. To botch; bungle. Used with up. [Middle English bicche, Old English bicce, female dog, from Germanic bekjon- (unattested).]
The American Heritage Dictionary of the English Language 135 (New College ed. 1979). While "bitch" is a poor choice of words to use in an elementary school classroom, nevertheless it is apparent that Forehand used the word in the sense of holding a "complaint" session, not in a profane sense. As Forehand's use of "bitch" was consistent with an accepted definition in a non-profane sense, this episode does not legally constitute conduct "so serious as to impair the individual's effectiveness in the school system."

C.
Likewise, the record lacks competent, substantial evidence to support the charge of gross insubordination or willful neglect of duties based on Forehand's "continuing, intentional refusal to obey a direct order, reasonable in nature, given by Principal Jerry Kelley." Section 231.36(4)(c), Florida Statutes (1989), gives the School Board authority to suspend a teacher for "gross insubordination" or "willful neglect" of duty. Rule 6B-4.009, Florida Administrative *1193 Code, defines "gross insubordination" or "willful neglect of duties" as "a constant or continuing intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority" (emphasis added). The word "intent" has been defined as follows:
The word "intent" is used throughout the Restatement of Torts, 2nd, to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it. Sec. 8A.
Black's Law Dictionary 727 (5th Ed. 1979) (emphasis added). An "intentional" act has been defined as one "done deliberately." American Heritage Dictionary of the English Language 683 (New College ed. 1979) (emphasis added).
No evidence was presented at the hearing that established that Forehand constantly, continually and intentionally refused to obey a direct order, reasonable in nature, given by the principal. The principal read into evidence a memorandum he had written to Forehand that stated, among other things:
"[A]ll grades are to be determined by averaging written assignments, projects, and test grades only. Any variation from this must be approved by me. Student conduct or behavior must not be considered in the tabulation of academic grades. Five, you may report student conduct with an S (satisfactory), N (needs improving) or U (unsatisfactory), personnel file."
Although the principal testified that at a conference with Forehand she "admitted ... that she was still giving O's and F's in taking off points student [sic] behavior and averaging it in with the grades after I had told her repeatedly, time and time again, personally in conferences and also in writing," not to do so, he could not recall precisely what Forehand said when explaining why she was taking points off for behavior. The principal stated that the only clear evidence of what Forehand had actually done was to be found in her grade book, but he had not brought it to the hearing and consequently it was not introduced in evidence. The principal's testimony regarding the contents of Forehand's grade book was uncorroborated hearsay.
The only other evidence of Forehand's "intent" came from Forehand's essentially uncontroverted testimony. She explained that in grading her students, she did precisely "what I thought [the principal] asked me to do." Forehand stated that earlier in the year, she had been giving O's and F's to students who were not working in class, but were just talking, writing notes, or doing something other than assigned work. After the principal told her that O's and F's would have to be based on a product that the student did not produce, she said "okay, I'll just give S's and N's instead of number grades." However, when she placed S's and N's on the report card, the person who entered the grades into the computer told her that everything in the computer would have to be based on number grades; so she "graded just on movement production that they either did or did not  and they still had plenty of O's and F's, though." Forehand also testified that at her conference with the principal, she told him that she no longer graded the students on behavior but only on product. Thus, there was no competent evidence to corroborate the principal's hearsay testimony concerning the grades that Forehand had recorded in her grade book, leaving this charge unsupported by competent, substantial evidence and legally insufficient to support the Board's conclusion that Forehand was guilty of gross insubordination. See § 120.58, Fla. Stat. (1989).
As the evidence is legally insufficient to support a finding of guilt on the last two charges, we vacate those findings and remand with directions to dismiss them. This dismissal brings into question whether the penalty of ten days suspension without pay would be appropriate if, upon a new hearing, the evidence should result in a finding of guilt on the remaining charge.

III.
Forehand's third point contends that the Board's action in authorizing her suspension *1194 for two weeks without pay amounted to the imposition of a fine or penalty that the Board had no authority to impose. She argues that the order exceeds the Board's statutory authority set forth in chapters 230 and 231, Florida Statutes, because no provision of either chapter gives the Board authority to impose a fine as a penalty for misconduct or insubordination.
Section 231.36(4)(c), Florida Statutes (1989), gives school boards the authority to suspend teachers without pay for certain misconduct:
(c) Any member of the district administrative or supervisory staff and any member of the instructional staff, including any principal, who is under continuing contract may be suspended or dismissed at any time during the school year; however, the charges against him must be based on immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of a crime involving moral turpitude. Whenever such charges are made against any such employee of the school board, the school board may suspend such person without pay; but if such charges are not sustained, he shall be immediately reinstated, and his back salary shall be paid... .
(Emphasis added). Contrary to Forehand's contention, the Board's order does not impose a fine for alleged misconduct; the order explicitly determines that "the Superintendent's recommendation of suspension, without pay, imposed on the Respondent for a period of ten days be sustained and that ten (10) days pay be withheld along the terms and guidelines set by the Superintendent" (emphasis added). Since Forehand has already served the suspension period (when she was initially suspended by the Superintendent without notice and an opportunity to be heard) and her previously withheld pay has been reinstated, the Board's order upholds the validity of the prior suspension and requires that Forehand's pay now be withheld for the stated time period as authorized by section 231.36(4)(c). We discuss this point only to provide guidance upon remand in the event the Board concludes that Forehand should be disciplined further.

IV.
Finally, Forehand contends that she is entitled to an award of attorney's fees and costs incurred in the entire course of these proceedings pursuant to section 120.57(1)(b)10 based on the Board's conduct of these proceedings, arguing that the following specific conduct amounted to gross abuse of discretion: (1) the use of the same attorney as prosecutor and legal advisor to the Board; (2) finding Forehand guilty of misconduct based solely on uncorroborated hearsay testimony; and (3) imposing the functional equivalent of a monetary fine for her alleged misconduct. We decline to characterize these matters as a gross abuse of discretion. The Board's errors leading to reversal for a rehearing have been more a product of confusion and misunderstanding than evidencing a reckless or wanton disregard of Forehand's legal rights. We hold that none of the specified conduct amounted to a gross abuse of discretion and decline to award attorney's fees and costs pursuant to section 120.57(1)(b)10.
For the foregoing reasons, the appealed order is vacated, and the cause is remanded for a new evidentiary hearing consistent with this opinion.
ORDER VACATED AND REMANDED.
BARFIELD, J., concurs.
WOLF, J., concurs in part and dissents in part with opinion.
WOLF, Judge, concurring in part and dissenting in part.
I concur with the majority opinion in all respects but one. I believe that there was competent substantial evidence to support the board's finding that Ms. Forehand continued *1195 "to base academic grading on classroom behavior," and that this "conduct was [a] continuing intentional refusal to obey a direct order, reasonable in nature given by Principal Jerry Kelley."
The board introduced a memorandum from Principal Kelley dated December 15, 1988, which specifically stated, "[S]tudent conduct or behavior must not be considered in the tabulation of academic grades." Principal Kelley testified that in a conference with Ms. Forehand on March 17, 1989, Ms. Forehand "admitted ... that she was still giving zeroes and F's and taking off points [for] student behavior, and averaging it with the grades after I had told her repeatedly, time and time again, personally in conferences and also in writing."
The principal also examined Ms. Forehand's grade book which also indicated that Ms. Forehand was continuing to disobey the principal's orders. The recordings in the grade book, which were made by Ms. Forehand, are not inadmissible hearsay as suggested by the majority, but rather are admissible as admissions of a party.[1] The foregoing was competent evidence to support the charges.
The majority indicates that because Mr. Kelley could not remember Ms. Forehand's explanation or excuse for her behavior, the board was required to accept Ms. Forehand's uncorroborated explanation. The finder of fact was free to accept or not to accept this testimony. The court should not substitute its judgment for the agency's judgment. See § 120.68(10), Fla. Stat. (1991). Since the agency's finding was supported by competent substantial evidence, it must be upheld. Pershing Indus., Inc. v. Department of Banking & Finance, 591 So.2d 991 (Fla. 1st DCA 1991).
NOTES
[1] While a valid objection may have been raised based on best evidence or authentication, no objection, including that of hearsay, was raised at the time this testimony was offered. See Cohen v. Department of Business Regulation, 584 So.2d 1083 (Fla. 1st DCA 1991). Further, even if said evidence constituted hearsay, it merely supplements the principal's testimony and is admissible pursuant to § 120.58(1)(a), Fla. Stat.