VAN NORTWICK, J.
John B. McAlpin, Chief of the Sneads Police Department, appeals the Criminal Justice and Standards Training Commission’s Final Order suspending his law enforcement certification for eighteen months, to be followed by two years’ probationary reinstatement. He argues that the procedure followed by the Commission, including having the prosecutor act as staff to the Commission at the final hearing, was contrary to law; the findings of fact of the administrative law judge (ALJ) were not supported by competent substantial evidence; and the ALJ’s conclusions of law were erroneous. We conclude that the first issue requires remand for a new final hearing.
The Commission filed an administrative complaint against McAlpin based upon his alleged misconduct during the course of a criminal investigation. The matter proceeded to a formal hearing before an ALJ, who subsequently issued a recommended order making findings of fact, conclusions of law, and a proposed penalty. The Commission held a final hearing to review the recommended order and the exceptions filed thereto by both McAlpin and the Commission, as petitioner.
Three attorneys were present at the final hearing: Linton Eason, who prosecuted the case on behalf of the petitioner, the Commission; William Furlow, who represented McAlpin; and Brian Fer-nandes, who served as legal advisor to the Commission. The Commission heard argument from the parties, during which Furlow objected to the fact that the prosecutor, Eason, was also acting as staff to the Commission and that the Commission had received a staff penalty recommendation that was not provided to McAlpin. Some of the commissioners began to make motions to vote on the recommended order, at which time Eason interposed and suggested that the proper procedure was for the commissioners to vote on McAlpin’s exceptions, then the prosecution’s exceptions, and then vote to accept or reject the recommended order. Fernandes then advised the commissioners that the correct procedure was to vote on “staffs recommendation,” then vote to accept the ALJ’s findings of fact and simultaneously deny McAlpin’s exceptions, and finally vote on the ALJ’s recommended penalty. The commissioners denied Eason’s exceptions and accepted the ALJ’s findings of fact. The commissioners then unanimously voted to accept the recommended penalty.
We conclude that a remand for a new final hearing is required by Cherry Communications, Inc. v. Deason, 652 So.2d 803, 804 (Fla.1995). In Cherry, the Florida Supreme Court considered “whether the same individual who prosecutes a case on behalf of the agency may also serve to advise the agency in its deliberations as an impartial adjudicator.” Id. The Court pro *1262 ceeded from the notion that “an impartial decision-maker is a basic constituent of minimum due process,” and that “the decision-maker must not allow one side in the dispute to have a special advantage in influencing the decision.” Id. at 804, 805 (citation omitted). The Court noted that the agency initially appeared to follow proper procedure by having two attorneys present at the hearing, “one to advise and one to prosecute.” Id. at 805. After reviewing the record, however, the Court found that a single attorney, designated as the prosecutor, simultaneously filled the roles of agency prosecutor and legal advis- or. Id. The Court observed that, as prosecutor, the attorney questioned witnesses and argued against the respondent; while as agency advisor, the same attorney submitted memoranda to the agency panel, which contained the attorney’s recommendations and comments on the evidence. Id. The Court vacated the final orders and remanded for a new hearing, concluding that the respondent’s due process rights were violated “[bjecause the prosecution was given special access to the deliberations.” Id.
There are important similarities between Cherry Communications and the case at hand. In both cases, there were purportedly an advisory attorney and a prosecutorial attorney. As in Cherry, here the agency staff submitted a memorandum to the agency board, entitled “Case Synopsis,” which included recommendations as to disposition; this document was not provided to McAlpin. From the face of the memorandum, it is not clear whether the document was submitted by Eason, Fer-nandes, or some other staff attorney. In the memorandum, the staff recommended rejecting the ALJ’s proposed penalty and, instead, proposed a complete revocation of McAlpin’s certification. The “Staff Penalty Recommendation” section is followed by “Staff Notes,” where the Commission is referred to “Staff Counsel’s Exceptions to Recommended Penalty.” Eason filed “Petitioner’s Exceptions to Recommended Penalty.” These documents portray Ea-son in the dual role of staff counsel, in which capacity he offers advice and recommendations to the Commission, and agency prosecutor, in which capacity he advocates the case against McAlpin and pursues the maximum administrative penalty. This dual-role on Eason’s part is augmented by the fact that Eason offered the Commission procedural and legal advice at the final hearing, where he also presented argument against McAlpin, even though Fer-nandes was present in an advisory role.
Reversal is also supported on the authority of Forehand v. School Board of Gulf County, 600 So.2d 1187 (Fla. 1st DCA 1992). In Forehand, a teacher appealed a school board’s final order suspending her without pay due to alleged misconduct. Id. at 1188. We reversed and remanded for a new evidentiary hearing when the record showed that the attorney for the school board served as both prosecutor for and advisor to the school board during an evidentiary hearing on the teacher’s suspension. We found that by questioning witnesses and introducing exhibits on the school board’s behalf during the hearing, the attorney was acting as prosecutor. Id. at 1190. We further found that at other times during the hearing the attorney acted as the school board’s advisor, providing guidance on procedural issues such as how to handle objections, whether the board’s deliberations should be public or private, and how to hold the final vote. Id. We rejected the school board’s argument that the teacher was not actually prejudiced by any of the attorney’s crossover activity, citing to previous decisions which held that proof that an agency attorney acted in dual capacities during proceedings “is sufficient in itself to demonstrate the requisite prej *1263 udice” to the complaining party. Id.; see also McIntyre v. Tucker, 490 So.2d 1012, 1013 (Fla. 1st DCA 1986) (“[Ijmpartiality and zealous representation are ... incompatible in the same person at the same time.”).
Although the heightened staff penalty recommendation was not ultimately implemented in the case before us, it is clear from the record that the prosecution was given enhanced access to the decision-making body. This enhanced access undermined the Commission’s function as an unbiased, critical reviewer of the facts. See Cherry Commc’ns, 652 So.2d at 805.
We emphasize that there is nothing inherently inappropriate with consolidating investigative, prosecutorial, and adjudicative authority in a single entity or agency. See Winslow v. Dep’t of Prof'l & Occupational Regulation, 348 So.2d 352 (Fla. 1st DCA 1977). We find nothing in Cherry Communications that would suggest otherwise. Rather, our decision is predicated upon the particular facts of the instant case. All future cases of this stripe must, correspondingly, be adjudicated on their unique circumstances; there is no bright line rule that can accurately address the full spectrum of potential factual scenarios.
Therefore, we REVERSE the Final Order and REMAND for the Commission to provide McAlpin a new final hearing in accordance with this opinion.
MAKAR, J., concurs.
THOMAS, J., Dissents without Opinion.